Filed 5/31/24  P. v. Orellana CA5
(Opinion following transfer from Supreme Court)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F082699 |
| Plaintiff and Respondent, | |
| v. | (Merced Super. Ct. No. 20CR-04944) |
| RAUL SHAWN ORELLANA, JR., | **OPINION** |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Merced County.  Steven K. Slocum, Judge.

Kevin J. Lindsley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Matthew A. Kearney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Appellant and defendant Raul Shawn Orellana (defendant) was convicted after a jury trial of second degree robbery (Pen. Code, § 211),[1] and sentenced to an aggregate second strike term of seven years in prison based on the court's imposition of the midterm.[2]

After defendant was sentenced and while his appeal was pending, "the Legislature enacted Senate Bill No. 567 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 731) (Senate Bill 567)" that amended subdivision (b)(6)(A) of section 1170 to create "a presumption that the sentencing court 'shall' enter a lower term sentence when, among other things, a 'psychological, physical, or childhood trauma' contributed to the offense.  [Citation.] The sentencing court may only depart from this lower term presumption if it finds that the aggravating circumstances outweigh the mitigating circumstances such that the lower term would be contrary to 'the interests of justice.' " (*People v. Salazar* (2023) 15 Cal.5th 416, 419 (*Salazar*).)

As the result of these amendments, section 1170, subdivision (b)(1) states that the court shall, "in its sound discretion," order imposition of the middle term except as otherwise provided.  Subdivision (b)(6)(A) states that notwithstanding subdivision (b)(1), "and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:  [¶]  (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."

---

[1] All further undesignated statutory citations are to the Penal Code unless otherwise indicated.

[2] We summarize the factual and procedural background of this case based on our prior opinion in defendant's direct appeal, *People v. Orellana* (Jan. 18, 2023, F082699) which extensively reviewed the trial and sentencing records.

In his direct appeal, among other issues, defendant argued the amendments to section 1170, subdivision (b)(6)(A) applied to his case because his appeal was not yet final. Defendant further argued remand was required because at the sentencing hearing, he introduced evidence of his history of mental illness and drug use in support of various defense motions, which raised the presumption of the lower term under the statute.

On January 18, 2023, this court filed the nonpublished opinion that affirmed the judgment and rejected defendant's contention that the matter should be remanded for resentencing. We held the amendments to section 1170, subdivision (b)(6)(A) applied to appellant's case because it was not final but found the trial court reviewed the entirety of the record, including evidence about defendant's mental health history and drug use, and expressly rejected defendant's reliance on his mental health claims when it denied his numerous sentencing motions for leniency and imposed the midterm.

On April 12, 2023, the California Supreme Court granted review in this case, and deferred briefing pending consideration and disposition of a related issue regarding the application of section 1170, subdivision (b)(6)(A) in the appellate opinion filed in *People v. Salazar* (2022) 80 Cal.App.5th 453, review granted October 12, 2022, S275788. In November 2023, the Supreme Court filed the opinion in *Salazar* and examined circumstances similar to the instant case, where section 1170, subdivision (b)(6)(A) went into effect after the defendant therein was sentence but while his appeal was pending. As we will discuss below, *Salazar* reversed and remanded that case for a new sentencing hearing, even though the middle term had been imposed, because there was "*no clear indication* in the record that the sentencing court would have imposed the same sentence had it been aware of ' "the scope of its discretionary powers" ' to impose the lower term" under the subdivision (b)(6)(A) of section 1170. (*Salazar, supra*, 15 Cal.5th at p. 419, italics added.)

3.

Thereafter, the California Supreme Court transferred the instant case to this court with directions to reconsider in light of *Salazar*. After receiving additional briefing from the parties, we remand the matter for a new sentencing hearing as required by *Salazar*.

## FACTUAL AND PROCEDURAL HISTORY

On August 20, 2020, defendant was arrested shortly after taking merchandise from a Dollar Tree store in Merced, and swinging a knife at the manager who followed him out of the store and tried to prevent him from leaving the area.

**The charges**

Appellant was charged by information with count 1, second degree robbery (§ 211), with enhancements for personal use of a deadly or dangerous weapon, a knife, in the commission of the offense (§ 12022, subd. (b)(1)), and that he had one prior strike conviction and one prior serious felony enhancement (§ 667, subd. (a)(1)) based on his conviction for violating section 246, shooting at an inhabited dwelling, in March 2010.

During the pretrial period, the court suspended proceedings twice and appointed experts to examine defendant because defense counsel expressed doubts about defendant's competency. In both proceedings, the court relied on the experts' reports, found defendant was competent, and reinstated criminal proceedings. The court also denied defendant's pretrial motion to dismiss his prior strike conviction pursuant to section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).[3]

On March 26, 2021, defendant was convicted of second degree robbery and the personal use enhancement was found true. The court found the prior conviction allegations were true.

## SENTENCING MOTIONS

After defendant was convicted, both parties filed sentencing motions.

---

[3] Defendant's motions and supporting exhibits are extensively discussed in this court's nonpublished opinion in defendant's direct appeal.

4.

**Defendant's Motions**

Prior to sentencing, defendant moved for an expert evaluation in order for the court to place him on mental health diversion pursuant to section 1001.36, based on the competency reports from both experts that he was diagnosed with bipolar disorder and methamphetamine use disorder. Defendant argued that he could be placed on "postconviction" diversion based on the holding in *People v. Curry* (2021) 62 Cal.App.5th 314, review granted July 14, 2021, S267394 (*Curry*). Defendant acknowledged a contrary conclusion was reached in *People v. Braden* (2021) 63 Cal.App.5th 330, review granted July 14, 2021, S268925 (*Braden*), that held a defendant was ineligible if he failed to request diversion before trial began.

Next, defendant asked the court to reconsider his pretrial motion to dismiss the prior strike conviction pursuant to section 1385 and *Romero*, so he could be placed on probation and attend a residential treatment program.

Defendant acknowledged he was presumptively ineligible for probation if the court did not dismiss the prior strike conviction but argued there were unusual circumstances because he was diagnosed with bipolar disorder when he was 16 years old, and he suffered from both bipolar disorder and methamphetamine use disorder. He further argued that the instant crime did not involve "actual violence," he did not get close to the store manager with the knife, the manager followed him, and he was paranoid at the time of the incident. He argued that he thought he had an EBT card to pay for the ice cream bar, the offense would not have occurred but for his bipolar and methamphetamine use disorders, he had not committed any prior violent crimes, and he had been accepted into a residential treatment program.

Defendant's sentencing motion was supported by letters from his family and friends about his claimed mental health issues – that when he took his medication and was sober, his symptoms were under control, he did well, and he was employed. He

moved into his own residence, but started using drugs again and became homeless because of his claimed mental health and drug problems.

Defendant's sister wrote that court-ordered rehabilitation and counseling would help his mental health and drug problems and "possibly help him resolve some past trauma he has never dealt with for example in 2013 when he was randomly stabbed at a liquor store and almost died" when he was in the wrong place at the wrong time. A former roommate wrote that defendant was stabbed in March 2013, when he went to the store to buy cigarettes, and defendant was always suspicious of his surroundings since that time.

A friend wrote that defendant was the oldest of five siblings, it was not easy for him when his parents separated when he was a teenager, and he lived with his father for 15 years. He then returned to his mother, and he was distant, cold, and "broken." He was not the same. Another friend wrote that when defendant was a young child, he was "a typical happy kid with all of the appropriate laughs, smiles, and harmless mischief that goes with it. As a teenager, he gradually became more withdrawn and rarely displayed feelings," and was " 'flat' " and " 'detached.' "

Defendant's mother wrote that he had struggled with mental illness and drug problems since he was 13 years old, he was diagnosed as bipolar when he was 15 years old, and she never got him help. "His father & I had a volatile relationship with domestic violence involved. His father didn't believe the doctors so he believed marijuana would help [defendant]. He began to use other drugs by 16 yrs. I called police to have him locked up for a [Welfare and Institutions Code section 5150 hold] I believe. I thought he was going to commit suicide because of his erratic behavior…. I didn't know how to help [him]. His father was a drug dealer."

Defendant's mother wrote that she remarried, and defendant got along with his stepfather, who was a police officer, but defendant's biological father "convinced him and put pressure on [him]" to stay away from them. Defendant's father was a bad

6.

influence and abandoned him when the father also became an addict. Defendant became homeless in 2008, she found him in a mental health facility in Oklahoma in 2016, and he became stable while on medication.

Defendant's stepfather wrote that defendant had drug and mental health problems, and they had to keep him away from the other children. When defendant returned to the area, he was a completely different person on medication. He did well, and he had a job and his own place. He went through some stress and started using drugs again, and he now needed a residential treatment program.

**The People's Opposition**

The People's opposition argued the court should not dismiss the prior strike conviction because of defendant's criminal history – he had several misdemeanors, the level of his crimes was increasing with an escalation of violence, and he had two prior violations of probation. He failed to previously take advantage of opportunities to address his drug and mental health issues, there was no evidence he would do so this time, and he posed a risk of danger to the public.

The People also opposed finding any unusual circumstances to grant probation, disagreed with defendant's summary of the facts of the instant case, and argued the evidence showed he used the knife to instill fear in the store manager and complete the robbery. Defendant's prior strike conviction also involved a violent crime since he was the driver when his cousin shot at an occupied dwelling.

## SENTENCING HEARING

**The Court's Denial of Defendant's Motions**

At the sentencing hearing, the court denied defendant's motion for diversion. It acknowledged there was a split of authority about whether "postconviction" diversion was statutorily authorized and held the plain language of the statute only permitted

7.

pretrial diversion.[4]  However, the court further found that even if "postconviction" diversion existed, defendant was not eligible because he would pose an unreasonable risk of danger to the public since he "already received the community treatment that's now being requested.  After becoming stabilized on medication and receiving medical support in both in-state and out-of-state hospitals, the defendant relapsed and eventually committed a violent felony offense with a deadly weapon."  The court also considered defendant's prior conviction for shooting at an inhabited dwelling in 2010, that occurred when he "drove his cousin to a home where the defendant's cousin fired a gun at an inhabited dwelling," he was placed on probation because of his youthful age, and the gang enhancements were dismissed in that case.

> "I have a genuine concern for the safety of the public based on the defendant's mental health issues, the defendant's severe methamphetamine addiction, his prior criminal conduct, and his conduct in this case.  [¶]  Here the defendant testified that he had previously been in possession of a firearm prior to the robbery.  Fortunately, he was not in possession of that gun on the occasion when he committed the robbery.  [¶] … [¶]

> "Prior to the robbery, the defendant also had decided to arm himself with a large kitchen knife.

> "There's no – in this Court's opinion, there's no question that the defendant needs drug treatment and mental health treatment.  But if he's treated in the community, there's an unreasonable risk that the defendant will stop treatment, relapse, and present an unreasonable risk of committing a homicide.

> "The defendant has been given treatment in the community for his mental health issues in the past, and he committed the present violent offenses following that treatment.  So the Court's opinion is that the

---

[4] In 2023, the California Supreme Court resolved this question and held that a defense motion for mental health diversion must be made before attachment of jeopardy at trial or the entry of a guilty or no contest plea, whichever occurs first.  (*People v. Braden* (2023)14 Cal.5th 791, 800.)

defendant should receive mental health treatment but in a locked facility setting."[5]

Next, the court denied defendant's request to dismiss the prior strike conviction based on the facts of the current offense, defendant's criminal record, the similarity between the current crime and his past violent crime, and his background and prospects. The court also considered mitigating factors and found defendant did not fall outside the spirit of the "Three Strikes" law.

The court stated that defendant was presumptively ineligible for probation because of the prior strike conviction. Defense counsel argued it was "undisputed" that defendant was under the influence of methamphetamine when he committed the current offense, and the section 1368 reports stated he suffered from mental illness.[6] Defendant was homeless, under the influence, and paranoid, and he took out the knife to protect himself but did not intend to use it. He did not commit any violent acts, and he was afraid because he did not know who Estacio was and why he was being yelled at.

Defense counsel further stated this case would be defendant's first prison commitment, and a prison term would be cruel and unusual under the circumstances because it would exacerbate his mental health problems and make it harder for him to get treatment.

The court stated that under section 1170.12, defendant was ineligible for probation because he had one prior serious felony conviction. The court agreed defendant needed treatment, but the question was whether it should be in the community or a locked facility. The court continued:

---

[5] Defense counsel objected and claimed defendant's testimony about a gun was stricken. The court disagreed, and the record shows that it was not stricken.

[6] There was no evidence that defendant was evaluated or tested for being under the influence of either alcohol or a controlled substance when he was arrested in this case. Officer Benavidez testified that he did not have to get defendant medically cleared when he was taken into custody.

9.

"He's been convicted of shooting at an occupied home. While on probation for that, he brandished a knife. And now he's been convicted of using a knife during a robbery. And I don't think he is a person who is suitable for treatment in the community for those reasons."

The court stated that the California Department of Corrections and Rehabilitation (CDCR) could treat an inmate with a mental illness, and it intended to direct that CDCR provide treatment for defendant's bipolar disorder.

**The Court's Imposition of Sentence**

The court's tentative sentencing decision was to impose an aggregate term of seven years based on the midterm of three years for robbery, doubled to six years as the second strike sentence, plus one year for the personal use enhancement. It intended to strike the five-year term for the prior serious felony enhancement. The court invited arguments about the length of defendant's prison term and the aggravating and mitigating factors.

Defense counsel argued that since the court denied probation, the "fairest term would be the lowest term possible and striking the so-called nickel prior enhancement and giving him four years, at most six years, midterm doubled," and a longer term would ignore his clear mental illness problems. The prosecutor stated that a prison term was appropriate, and defendant could receive treatment there.

The court again stated that probation was denied because defendant was statutorily ineligible. The court found one mitigating factor, that the value of the property taken insignificant. The court stated that the aggravating factors were that defendant engaged in violent conduct that indicated a serious danger to society, his prior convictions as an adult were of increasing seriousness, he was previously an aider and abettor to a shooting, his prior performance on probation was unsatisfactory, he was convicted of brandishing a weapon while on felony probation, he was on probation when he committed this robbery, and he personally committed the robbery and personally used a weapon in the commission of the robbery.

10.

The court imposed the midterm of three years in prison for count 1, "[i]n balancing the factors and based on the facts of this case," and doubled the term to six years as the second strike sentence, plus one year for the personal use enhancement, for an aggregate term of seven years. The court exercised its discretion to dismiss the five-year prior serious felony enhancement because the conviction was more than 10 years old, and it would be inappropriate to impose the enhancement in this case.

The court further stated: "I will note on the Minutes that the [CDCR] evaluate and treat defendant for a diagnosed bipolar disorder."

## DEFENDANT'S DIRECT APPEAL

In defendant's direct appeal, the parties agreed the amendments to section 1170, subdivision (b)(6)(A) were enacted while his appeal was pending, and constituted ameliorative legislation that applied retroactively to judgments that were not final at the time the statutory amendments went into effect. (See, e.g., *Salazar, supra*, 15 Cal.5th at p. 419.)

Defendant asserted there was evidence in the competency reports, his sentencing motions, and supporting exhibits that established he suffered from mental health and drug problems both as a child and an adult that constituted psychological or childhood trauma that significantly contributed to his commission of the robbery in this case and would trigger the presumption stated in subdivision (b)(6)(A) of section 1170.

On January 18, 2023, this court filed in nonpublished opinion in *People v. Orellana*, *supra*, F082699, that affirmed the judgment. We rejected defendant's arguments that remand was required for a new sentencing hearing and held the entirety of the record showed the trial court considered defendant's evidence that allegedly showed he suffered from "psychological" or "childhood trauma" under section 1170, subdivision (b)(6)(A), and it rejected all of defendant's sentencing motions for leniency. We further held the record contained no evidence that defendant suffered from any "childhood trauma" aside from the diagnosis of his bipolar disorder, or that such

11.

"trauma" was a contributing factor in the commission of the robbery. While his exhibits stated that he was diagnosed with bipolar disorder, used drugs as a teen, and referred to his parents' difficult relationship, none of these exhibits described "childhood trauma" that was a contributing factor to his commission of the robbery.

We held defendant fully developed the record as to his history of mental illness and drug use, and the court expressly addressed and rejected these arguments when it denied his numerous motions for leniency and imposed the midterm. While the court acknowledged defendant's history of mental health problems and drug abuse, it did not find that these issues played any type of role in the commission of the robbery, and instead focused on defendant's use of the knife and that his offenses involved the escalating use of force.

We held the trial court's decision to impose the middle term negated the potential application of section 1170, subdivision (b)(6)(A) to this case. We concluded the trial court fully considered defense counsel's arguments and reviewed the exhibits about defendant's mental health and drug problems, and found one mitigating factor, that the value of the property taken was insignificant; and found multiple aggravating factors, including that defendant was previously an aider and abettor to a shooting, he was convicted of brandishing a weapon while on felony probation, and he personally committed the robbery and personally used a weapon in the commission of the robbery. Based on these findings, the court denied defendant's request for the lower term and imposed the midterm. The trial court's findings on aggravating and mitigating circumstances, and its denial of defendant's motion for the lower term and decision to impose the midterm, indicated the court would have reached the same conclusion to impose the midterm under the amended law and remand is not required.

This court also rejected defendant's argument that the trial court improperly imposed fines and fees in this case.

12.

**Petition for Review**

Defendant filed a petition for review, and the Supreme Court granted the petition. After issuing the decision in *Salazar*, the Supreme Court transferred the case back to this court with directions to reconsider in light of *Salazar*. We ordered supplemental briefing from the parties and consider their contentions in light of *Salazar*.

## DISCUSSION

### I.    Salazar

As explained above, section 1170, subdivision (b)(1) states that the court shall, "in its sound discretion," order imposition of the middle term except as otherwise provided. Subdivision (b)(6)(A) states that notwithstanding subdivision (b)(1), "and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:  [¶]  (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(1).)

The California Supreme Court addressed these provisions in *Salazar*, where the defendant was convicted of infliction of corporal injury on a person with whom he had a current or former dating relationship and false imprisonment by violence or menace, with a prior strike conviction. At the sentencing hearing, the court complimented the defendant's respectful behavior during trial, emphasized how his drug use affected his criminal history, acknowledged the impact his parents' deaths had on him, and expressed hope for his rehabilitation. (*Salazar, supra*, 15 Cal.5th at pp. 420–422.) The court imposed the middle term based on evidence that " 'the defendant's criminal history has been drug related.' " (*Id.* at p. 423.)

On appeal, the defendant argued the matter should be remanded for a new sentencing hearing because section 1170, subdivision (b)(6)(A) had become effective

13.

while his appeal was pending, and he suffered from a qualifying trauma that met the threshold requirement for triggering the lower term presumption. (*Salazar, supra*, 15 Cal.5th at p. 419.) The appellate court rejected his argument and found the sentencing court would not have imposed the lower term if it had been aware of its discretion under subdivision (b)(6)(A) because the probation report identified multiple aggravating factors; the court denied the defendant's *Romero* motion and request for probation, highlighting his lengthy criminal history; the court imposed consecutive sentences instead of concurrent sentences; the facts of the current offenses were sadistic; and a criminal protective order against the defendant and the probation report indicated he had a record of violence against other women. (*Salazar*, at pp. 423–424.)

The Supreme Court granted review, reversed the appellate court, and held remand was required because "the sentencing court did not *clearly indicate* that it would have imposed the same sentence even if it had been aware of the scope of its discretionary powers under the current section 1170." (*Salazar, supra*, 15 Cal.5th at p. 426, italics added.) The Attorney General conceded there was evidence that the defendant may have suffered a qualifying trauma, but argued the record clearly indicated that even if the court had been aware of such discretion, it still would have refused to impose the lower term. (*Ibid*.)

*Salazar* rejected each of the Attorney General's arguments. First, it held the sentencing court's description of the aggravating factors and the defendant's " 'long and continuous criminal history' " did not constitute " 'a clear indication' that the court would not have imposed a lower term…." (*Salazar, supra*, 15 Cal.5th at p. 426.) *Salazar* acknowledged the trial court imposed the middle term but held the new law "now *require[s]* the court to impose the lower term if a qualifying trauma was a contributing factor in the commission of the offense 'unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice.' [Citation.] Accordingly, under the

14.

new law, the presumption is that the court '*shall* order imposition of the lower term' whenever the defendant has a qualifying trauma." (*Id*. at pp. 426–427.) "[T]he facts that the offenses were violent and occurred over an extended period and that the sentencing court noted [the defendant] had an extensive criminal history does not suffice to provide a clear indication the court would have departed from this presumptive lower term in the 'interests of justice.' " (*Id.* at p. 427.)

As to the nature of the crime, *Salazar* noted the appellate court found the current offenses were " 'aggravated, sadistic' and 'akin to torture,' " but the sentencing court "did not even mention the nature of the crime as part of its sentencing determination." (*Salazar, supra*, 15 Cal.5th at p. 427.) *Salazar* held the appellate court could not "substitute its own view of the offenses for the sentencing court's in determining whether remand is appropriate." (*Ibid*.)

*Salazar* found the sentencing court referenced the defendant's extensive criminal history and several related mitigating factors, praised his courtroom conduct, and acknowledged his criminal history was " 'primarily bound up with his drug addiction and mental health issues …,' " and did not impose the upper term, but held these findings were "simply not the kind of record upon which we can conclude that there is a clear indication that the sentencing court would have exercised its discretion under the current section 1170 to impose the same middle term as before." (*Salazar, supra*, 15 Cal.5th at pp. 427–428.) "[W]e cannot say that simply because the sentencing court made a cursory reference to the extended duration of the crime and mentioned [the defendant's] long criminal history that this provides a clear indication that the court would have concluded that "the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." (*Id*. at p. 428.)

*Salazar* also rejected the argument that the sentencing court's denial of the defendant's motion to dismiss the prior strike convictions pursuant to *Romero* gave "a clear indication" of its intent not to impose the lower term. "[A] *Romero* motion …

requires the sentencing court to utilize a different legal standard with a different presumption than would be applied under the current section 1170." (*Salazar, supra*, 15 Cal.5th at p. 428.) "[T]he Three Strikes law establishes a 'strong presumption' in favor of a harsher sentence and requires the court to explicitly articulate its reasoning if it is to depart from a harsher sentence by granting the *Romero* motion. [Citation.] In contrast, the current section 1170 does just the opposite: In cases where the defendant can establish certain qualifying attributes, such as psychological, physical, or childhood trauma that contributed to the offense, the statute now creates a presumption in favor of a more lenient, lower term sentence. This lower term presumption under section 1170 can then only be departed from if 'the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice.' " (*Ibid.*) The sentencing court's denial of the defendant's *Romero* motion "tells us little about what it would have done if given the opportunity to exercise its discretion on another sentencing issue under the current section 1170." (*Ibid.*)

*Salazar* next rejected the argument that the sentencing court's decision to impose consecutive instead of concurrent terms provided a "clear indication" of its intent not to impose the lower term. Instead, the sentencing court "was focused on a very different inquiry" as to whether the crimes were committed at different times or separate places, and its decision to impose consecutive terms was "a wholly distinct inquiry from whether a lower term would be contrary to 'the interests of justice.' " (*Salazar, supra*, 15 Cal.5th at p. 429.)

Finally, *Salazar* rejected the argument that the sentencing court's decision not to impose the upper term was a clear indication of its intent, because it never contemplated the lower term. "[T]he court never had the opportunity to consider the new lower term presumption for qualifying offenders. The fact that the court did not expressly indicate that it was considering imposing the lower term reveals very little, as the newly enacted

16.

presumption in favor of the lower term did not exist at the time of [the defendant's] sentencing." (*Salazar, supra*, 15 Cal.5th at p. 430.)

*Salazar* concluded that "*unless there is a clear indication* from the sentencing court that it would be idle to do so, remand for resentencing is required. When the applicable law governing the defendant's sentence has substantively changed after sentencing, it is almost always speculative for a reviewing court to say what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing. *Mere reliance on the length of the original sentence and attendant decisions, such as imposing consecutive sentences, imposing middle or upper term sentences, or declining to strike enhancements, is not sufficient to provide a clear indication of what a sentencing court might do on remand if it had been fully aware of the scope of its discretionary powers.*" (*Salazar, supra*, 15 Cal.5th at p. 431, italics added.) *Salazar* also cited "the Attorney General's concession that there is at least an affirmative indication in the record that [the defendant] may have suffered a qualifying trauma and that such qualifying trauma may have been a contributing factor to the offense; given that the sentencing court expressly referenced various mitigating factors in its ruling; and given that the sentencing court declined to impose the high term, we find no clear indication that the sentencing court would impose the same sentence even under the new law." (*Ibid.*)

"The current section 1170 is an ameliorative law that *requires* the sentencing court to impose the low term in cases where a qualifying trauma contributed to the offense and permits the sentencing court to depart from the lower term only in specific circumstances. This is a marked departure from the prior law under which [the defendant] was sentenced. The record must, accordingly, be clear before a reviewing court declines to remand and precludes the sentencing court from exercising discretion that it never knew it had. On this record, 'we cannot say with confidence what sentence [the court] would have imposed' if it were applying Senate Bill 567 in the first instance. [Citation.] The

17.

Legislature has created a procedure for a defendant to seek resentencing and the parties agree that [the defendant], whose case is not yet final on appeal, is entitled to its application in this case." (*Salazar, supra*, 15 Cal.5th at p. 432.)

*Salazar* remanded the matter but, in doing so, expressed no view on how the sentencing court should resolve the question under section 1170, subdivision (b)(6)(A). (*Salazar, supra*, 15 Cal.5th at p. 432.)

## II.     The Parties' Arguments

After the Supreme Court transferred defendant's appeal back to this court, we ordered supplemental briefing from the parties on the application of *Salazar* to this case, and whether the matter should be remanded for the trial court to consider subdivision (b)(6)(A) of section 1170.

In his supplemental brief, defendant argued his case is identical to the circumstances addressed in *Salazar* because there is no "clear indication" the trial court would have imposed the middle term even if it had been aware of the scope of its discretionary power to impose the lower term under the provisions of section 1170, subdivision (b)(6)(A). Defendant summarized the motions and supporting exhibits for both his pretrial and sentencing motions, and that the trial court acknowledged he suffered from "long standing mental health issues that would require ongoing treatment."

Defendant argued the trial court did not make any findings as to whether a presumptive lower term, now required by section 1170, subdivision (b)(6)(A), "would be rebutted by aggravating circumstances outweighing mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice." The "fact" of his mental health history was developed at the sentencing hearing, but "the root causes of [his] mental illness and the nexus between the mental illness and the offense were neither fully developed by counsel nor properly considered by the court" as would have been required by subdivision (b)(6)(A). Defendant argued remand was appropriate because it

could not be said "with confidence" what sentence would have been imposed if it had considered the provisions of subdivision (b)(6)(A).

The Attorney General argued *Salazar* is inapplicable to this case and remand is not required. In doing so, the Attorney General relied on the same arguments raised in the direct appeal, that while defendant presented evidence of his claimed mental health history to the court, such allegations did not amount to the qualifying trauma to would trigger the presumption raised in section 1170, subdivision (b)(6)(A). The Attorney General further argued that defendant had "clearly" forfeited any claim based on *Salazar* and subdivision (b)(6)(A) because he made "no effort to provide any analysis as to exactly how" the evidence he presented at the sentencing hearing amounted to the trauma defined in that subdivision.

## III.    Analysis

We find that remand for a new sentencing hearing is required by *Salazar's* analysis of section 1170, subdivision (b)(6)(A).

First, we reject the Attorney General's assertion that defendant somehow forfeited any argument for remand for resentencing pursuant to subdivision (b)(6)(A) of section 1170. In his direct appeal, defendant raised the issue that the amendments to subdivision (b)(6)(A) applied to his case since it was not final on appeal and remand was required. This court rejected the argument and defendant filed a petition for review. The Supreme Court granted review on this issue and then transferred defendant's appeal back to this court with directions to reconsider our holding in light of *Salazar*. In response to our order for further briefing, defendant filed supplemental briefing stating why the evidence he presented at the sentencing hearing would have supported resentencing under subdivision (b)(6)(A), that counsel could raise arguments focused on the statutory requirements to trigger the presumption of the lower term, and remand was required under *Salazar*. Defendant has not forfeited any aspect of this sentencing issue.

19.

Next, the Attorney General's reliance on the same arguments that it raised in the direct appeal is not persuasive because those claims do not address the specific findings in *Salazar*. In this court's opinion in the direct appeal, we agreed with the Attorney General that the entirety of the court's findings at defendant's sentencing hearing refuted his arguments that remand was required; a similar conclusion was reached by the appellate court in *Salazar*. The Attorney General has not addressed the application of *Salazar* to this case, and whether the trial court's decision to deny defendant's sentencing motions and impose the middle term "clearly indicated" it would have imposed the same sentence if it had been aware of the scope of its discretionary powers under the now-applicable version of subdivision (b)(6)(A). (*Salazar, supra*, 15 Cal.5th at p. 419.)

The Attorney General correctly notes that in contrast to *Salazar*, the People have not conceded in this case that the record shows the defendant "may have suffered a qualifying trauma, which would appear to meet the statute's threshold requirement for triggering the lower term presumption." (*Salazar, supra*, 15 Cal.5th at p. 419.) While there is no such concession in this case, we are not dealing with a silent record or one devoid of any evidence regarding defendant's claims of a mental health history that amounts to the "trauma" required by subdivision (b)(6)(A). This court's opinion in defendant's direct appeal recounted defendant's numerous motions that described his alleged mental health issues. Indeed, the trial court acknowledged such evidence when it imposed sentence and ordered defendant receive mental health treatment in state prison.

We also note that as in *Salazar*, the court in this case imposed the middle term and denied defendant's other sentencing motions for leniency, including his request to dismiss the prior strike conviction, place him on probation, impose the lower term, and his legally-invalid motion for "postconviction" diversion. Also as in *Salazar*, the court's findings when it ruled on those motions do not "clearly indicate" it would have reached the same decision if it had been aware of its discretion under section 1170, subdivision (b)(6)(A). (*Salazar, supra,* 15 Cal.5th at pp. 431–432.) "Mere reliance on

20.

the length of the original sentence and attendant decisions, such as imposing consecutive sentences, imposing middle or upper term sentences, or declining to strike enhancements, is not sufficient to provide a clear indication of what a sentencing court might do on remand if it had been fully aware of the scope of its discretionary powers." (*Id*. at p. 431.)

Based on the Supreme Court's ruling in *Salazar*, we are thus compelled to "remand the matter to allow the sentencing court to exercise its discretion in the first instance." (*Salazar, supra*, 15 Cal.5th at p. 432.) Also as in *Salazar*, we "express no view as to how the court should resolve" the issues presented by the amendments to section 1170, subdivision (b)(1), that the court shall, "in its sound discretion," order imposition of the middle term except as otherwise provided; and section 1170, subdivision (b)(6)(A), that notwithstanding subdivision (b)(1), "and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170 subd. (b)(1); *Salazar,* at p. 432.)

## **DISPOSITION**

Defendant's convictions are affirmed.  Defendant's sentence is reversed, and the matter remanded to the trial court for resentencing consistent with section 1170, subdivision (b)(6)(A) and *Salazar*.


POOCHIGIAN, J.

WE CONCUR:


LEVY, Acting P. J.


DETJEN, J.

22.